IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TIMOTHY LABATTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-798C |
| | ) | (Senior Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

MARTIN F. HOCKEY, JR.
Assistant Director

MATTHEW ROCHE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0466
Facsimile: (202) 514-8624
Matthew.P.Roche@usdoj.gov

November 7, 2016                    Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

DEFENDANT'S BRIEF ................................................................................................1

QUESTIONS PRESENTED.........................................................................................1

STATEMENT OF THE CASE.....................................................................................2

    I.  Factual Background .............................................................................................2

        A.  The Pigford Case.........................................................................................2

        B.  The *Keepseagle* Settlement Agreement .....................................................3

        C.  Mr. LaBatte's Track B Claim .....................................................................6

        D.  Mr. LaBatte's Track B Claim Is Denied ....................................................7

        E.  Mr. LaBatte's Notice Of Disagreement .....................................................7

    II.  Procedural History .............................................................................................8

        A.  Plaintiff's Motion To Intervene ................................................................8

        B.  District Court Decision ..............................................................................8

        C.  The D.C. Circuit's Decision.....................................................................10

        D.  Plaintiff's Complaint In The Court Of Federal Claims .............................10

SUMMARY OF ARGUMENT ..................................................................................11

ARGUMENT ............................................................................................................12

    I.  Standard Of Review..........................................................................................12

        A.  Subject-Matter Jurisdiction......................................................................12

        B.  Failure To State A Claim ..........................................................................12

II.   The Complaint Should Be Dismissed For Lack Of Subject-Matter Jurisdiction...............13

III. Alternatively, The Complaint Should Be Dismissed For Failure To State A Claim.........18

CONCLUSION..........................................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... 13, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................... 13

*Centex Corp. v. United States*,
   395 F.3d 1283 (Fed. Cir. 2005) ....................................................... 18

*Doe v. United States*,
   513 F.3d 1348 (Fed. Cir. 2008) ....................................................... 17

*First Nationwide Bank v. United States*,
   431 F.3d 1342 (Fed. Cir. 2005) ....................................................... 18

*Godwin v. United States*,
   338 F.3d 1374 (Fed. Cir. 2003) ............................................. 12, 13, 22

*Hall v. United States*,
   69 Fed. Cl. 51 (2005) ...................................................................... 13

*Henke v. United States*,
   60 F.3d 795 (Fed. Cir. 1995) ........................................................... 12

*In re Veneman*,
   309 F.3d 789 (D.C. Cir. 2002) ........................................................... 1

*Johnson v. United States*,
   107 Fed. Cl. 379 (2012) .................................................................. 17

*Keepseagle v. Veneman*,
   No. 99-3119, 2001 WL 34676944 (D.D.C. Dec. 12, 2001) ............... 2, 3, 8

*Keepseagle v. Vilsack*,
   815 F.3d 28 (D.C. Cir. 2016) .................................................... passim

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994) ........................................................................... 8

*McNutt v. Gen. Motors Acceptance Corp.*,
   298 U.S. 178 (1936) ........................................................................ 12

*Metcalf Const. Co. v. United States*,
　742 F.3d 984 (Fed. Cir. 2014) ............................................................... 18

*Minesen Co. v. McHugh*,
　671 F.3d 1332 (Fed. Cir. 2012) .............................................................. 14

*Monsanto Co. v. McFarling*,
　302 F.3d 1291 (Fed. Cir. 2002) ........................................................ 13, 14

*Outlaw v. United States*,
　116 Fed. Cl. 656 (2014) ......................................................................... 16

*Perez v. United States*,
　156 F.3d 1366 (Fed. Cir. 1998) .............................................................. 13

*Pigford v. Glickman*,
　206 F.3d 1212 (D.C. Cir. 2000) ............................................................... 2

*Pigford v. Glickman*,
　No. 97-1978, 2000 WL 34292618 (D.D.C. filed Aug. 28, 1997) ............... 2

*Pigford v. Veneman*,
　292 F.3d 918 (D.C. Cir. 2002) ............................................................... 15

*Precision Pine & Timber, Inc. v. United States*,
　596 F.3d 817 (Fed. Cir. 2010) ............................................................... 18

*Scheuer v. Rhodes*,
　416 U.S. 232 (1974) ............................................................................... 12

*Stovall v. United States*,
　71 Fed. Cl. 696 (2006) ........................................................................... 13

*T. Brown Constructors, Inc. v. Pena*,
　132 F.3d 724 (Fed. Cir. 1997) .......................................................... 14, 16

*Taylor v. United States*,
　303 F.3d 1357 (Fed. Cir. 2002) .............................................................. 12

*Terry v. United States*,
　103 Fed. Cl. 645 (2012) ......................................................................... 22

*Todd v. United States*,
　386 F.3d 1091 (Fed. Cir. 2004) .............................................................. 17

iv

**Statutes**

15 U.S.C. § 1691 ................................................................................................................. 2

Pub. L. No. 105-277, § 741(e), 112 Stat. 2681 (1998) .................................................. 2

**Rules**

RCFC 12(b)(1) ..................................................................................................................... 1

RCFC 12(b)(6) ....................................................................................................... 1, 12, 13, 22

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TIMOTHY LABATTE,                    )
                                    )
              Plaintiff,            )
                                    )
       v.                           )        No. 16-798C
                                    )        (Senior Judge Firestone)
THE UNITED STATES,                  )
                                    )
              Defendant.            )

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of

Federal Claims (RCFC), defendant, the United States, respectfully requests the Court to dismiss

the complaint for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim

upon which relief may be granted.  In support of its motion, defendant relies upon plaintiff's

complaint, the appendix attached to the complaint, and the following brief.

DEFENDANT'S BRIEF

QUESTIONS PRESENTED

1.       Whether this Court possesses subject-matter jurisdiction to entertain the claims

brought by plaintiff, Timothy LaBatte, when the Settlement Agreement expressly provided that

determinations made by the claim administrator were not reviewable by any court.

2.       Mr. LaBatte claims that the Government breached the Settlement Agreement by

instructing his two declarants not to submit declarations that were required to prove his claim of

discrimination.  Does the complaint fail to state a claim for which relief can be granted because,

considering the facts as stated, there could not have been a breach of the Settlement Agreement

when (1) the draft declarations were from two Government employees and the Settlement

Agreement expressly provides that that Government employees shall have no role in the claims

adjudication process, and (2) when the claims administrator provided an alternative reason for his determination?

STATEMENT OF THE CASE

I.      Factual Background

      A.      The Pigford Case

In 1997, a group of approximately 22,000 African-American farmers filed a class action lawsuit alleging that the United States Department of Agriculture (USDA) had engaged in race discrimination in the administration of its farm loan and benefit programs and had failed to investigate complaints of discrimination. *Pigford v. Glickman*, No. 97-1978, 2000 WL 34292618 (D.D.C. filed Aug. 28, 1997). The district court certified a class and ultimately approved a settlement with USDA, which the United States Court of Appeals for the District of Columbia Circuit affirmed. *Pigford v. Glickman*, 206 F.3d 1212, 1219 (D.C. Cir. 2000). After Congress passed a statute extending the limitations period for certain claims against USDA, *see* Pub. L. No. 105-277, § 741(e), 112 Stat. 2681, 2681-31 (1998), various groups of farmers filed lawsuits in district court making allegations similar to those made by the African-American farmers in *Pigford*.

In 1999, a putative class of Native-American farmers filed this lawsuit under, inter alia, the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, against the Secretary of Agriculture, alleging that USDA discriminated against them in the administration of farm loan and other benefits programs and failed to investigate their administrative discrimination complaints. The district court certified a class. *See Keepseagle v. Veneman*, No. 99-3119, 2001 WL 34676944 (D.D.C. Dec. 12, 2001).

2

B.      The *Keepseagle* Settlement Agreement

Over the next eight years, the Government engaged in extensive class-wide discovery and eventually reached a class-wide settlement agreement.   Class members were permitted to opt out of the class and the settlement.  According to the Settlement Agreement, the United States provided a compensation fund totaling $680 million.  *See* Pl. App. at 15 (Settlement Agreement (SA) § VII.F).

The Settlement Agreement created a two-track non-judicial claims process.  *See id.* at 17-35 (SA § IX).  A claimant could choose to pursue a claim under Track A or Track B. Under Track A, a claimant could seek $50,000 in liquidated damages if he proved the required elements under the substantial evidence burden of proof. *See id.* at 10, 24 (SA §§ II.SS, IX.C).  Under Track B, a claimant could seek actual damages, up to $250,000, if he proved the required elements under the preponderance of the evidence standard. *See id.* at 10, 26 (SA §§ II.VV, IX.D).  Track B generally required claimants to use documentary evidence that was admissible under the Federal Rules of Evidence, but a claimant could use a "credible sworn statement based on personal knowledge by an individual who is not a member of the Claimant's family" to prove "the identity of a similarly situated white farmer" and that "the Claimant filed a discrimination complaint with the USDA." *Id.* at 27 (SA § IX.D.2.a(1), (2)).  The Settlement Agreement provided that third party claims adjudication companies suggested by class counsel and approved by the district court would serve as the "Track A Neutral" and the "Track B Neutral," *id.* at 9, 11 (SA §§ II.OO, II.AAA), and would make the determinations of whether the claimants had proven the elements of their claims, *id.* at 24, 26 (SA §§ IX.C, IX.D)[1].

---

[1]  The vast majority of claimants elected to pursue Track A.  4,765 Track A claims were submitted and 146 Track B claims were submitted.  *See Keepseagle v. Veneman*, No. 99-3119

The Settlement Agreement established that claims determinations by the Neutrals were final and non-reviewable.  Indeed, section IX.A.9 of the Settlement Agreement provided that, "[t]he Claim Determinations, and any other determinations made under this Non-Judicial Claims Process are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise."  *Id*. at 21 (SA § IX.A.9).  It further stated that, "[t]he Class Representatives and the Class agree to forever and finally waive any right to seek review of the Claim Determinations, and any other determinations made under this Non-Judicial Claims Process."  *Id.*  Moreover, the Settlement Agreement defined a "claim determination" as "the binding and final result of a Track A or a Track B adjudication" that "represents whether a Class member is eligible to receive an award as a result of the Non-Judicial Claims Process, and if so, the amount of the award."  *Id.* at 4 (SA § II.C).[2]

The Settlement Agreement also repeatedly stated that the district court's continuing jurisdiction over the case would be strictly limited.  The subsection of the Settlement Agreement entitled "Court Supervision" provided that the district court "shall retain jurisdiction over this action beyond the date of final approval of this Agreement only as set forth below" and for five years from the date of approval of the agreement.  *Id*. at 41 (SA § XIII.A).  With respect to the

---

(D.D.C. Jul. 14, 2014) (ECF 618-1 ¶ 26).  Overall, 3,594 Track A claimants (70.3%) were successful, whereas only 14 Track B claimants were successful (9.5%).  *Id*. (ECF 646 at 2).

[2]  In addition to the damages from the non-judicial claims process, any successful claimant who had outstanding debt with USDA was also entitled to debt relief.  *See* Pl. App. at 29 (SA § IX.E).  The Settlement Agreement also included detailed requirements for distributing claim determinations and settlement funds.  *See id*. at 31 (SA § IX.F).  It also specified that any remaining balance would be put into a *cy pres* fund for the benefit of Native American farmers and ranchers.  *Id.* at 34-35 (SA § IX.F.9).  Finally, USDA agreed to certain "programmatic relief" for a term of five years.  *See id.* at 36-43 (SA § XII).

non-judicial claims process, the Settlement Agreement provided that the district court "shall retain jurisdiction over this action to supervise the distribution of the Fund" and to ensure that the debt relief awards are applied by USDA. *Id*. (SA § XIII.A.1). The Settlement Agreement also provided for continuing jurisdiction to ensure that USDA carries out much of the programmatic relief and to supervise whether the Farm Service Agency issued certain notices regarding a moratorium on certain types of debt collection. *Id.* at 41-42 (SA § XIII.A.2-5). At the end of this subsection, the Settlement Agreement reiterated that, "[o]ther than the provisions expressly described above and subject to the limitations agreed upon by the parties above, the Court will not retain jurisdiction over any aspect of this action, or in connection with the enforcement of any of its provisions, after the date of the final approval of this Agreement." *Id.* at 41 (SA § XIII.A).

The subsection entitled "Enforcement of the Settlement Agreement" likewise emphasized that only certain provisions of the Settlement Agreement are enforceable by the district court. It provided that a party seeking enforcement of an alleged violation "of the provisions of the Settlement Agreement that are enforceable by the Court" must serve a written notice on the opposing party describing "with particularity" the terms of the Settlement Agreement that were violated, the "specific errors or omissions" upon which the violation was based, and the relief sought. *Id.* at 43 (SA § XIII.B). If the opposing party did not respond within forty-five days, the party seeking enforcement could "move for enforcement of the provisions of this Settlement Agreement that are enforceable by the Court." *Id.* (SA § XIII.B.2).

Additionally, the Settlement Agreement provided that "Except as specified in paragraph 5 of Section IX.B and paragraph 2 subsection a of Section IX.A, the Secretary and/or the United

States shall have no role in the Non-Judicial Claims Process."[3]  *Id.* at 21 (SA § IX.A.10).  The

Settlement Agreement defines the "United States" as "individually and collectively, the

Executive Branch of the United States, its agencies, instrumentalities, agents, officers, and

employees."  *Id.* at 11 (SA § II.BBB).

The district court approved the Settlement Agreement and entered a Final Order and

Judgment dismissing the case on April 29, 2011.  *Id.* at 155.  The order states:  "This action is

dismissed with prejudice.  In accordance with the terms of the Settlement Agreement, this Court

hereby retains continuing jurisdiction for a period of five years from the date of entry of this

Final Judgment for the limited purposes set forth in Section XIII of the Settlement Agreement."

*Id.*

C.    Mr. LaBatte's Track B Claim

Mr. LaBatte elected to submit a claim under Track B.  Pl. App. Ex. E.  His submission

included a declaration from his attorney that recounted his attempts to obtain the information

necessary for his claim.  Pl. App. at 655 (Declaration of Erick Kaardal).  His attorney, Mr.

Kaardal, stated that he had located two individuals, Tim Lake and Russell Hawkins, who were

willing to submit declarations in support of Mr. LaBatte's claim of discrimination, but that they

were employees of the Bureau of Indian Affairs, and alleged that "the federal government (the

defendant in this case) would not allow them to sign the declarations because the federal

---

[3]  Paragraph 5 of Section IX.B provides for special claims submission requirements for
class members seeking debt relief.  *See* Pl. App. at 23.  Paragraph 2 of subsection a of Section
IX.A involves the identification of persons who were deemed to have waived their right to
pursue a claim through the Settlement Agreement because they had previously submitted claims
in three other discrimination class action suits involving the USDA's Farm Loan Program, and
requires the Secretary to provide an updated list of those claimants on a monthly basis to the
Claims Administrator.  *See id.* at 18-19.  The parties agree that neither of these provisions are at
issue in this case.  *See* Compl. ¶ 223.

government is a party." *Id.* (Kaardal Decl. ¶ 4).  Mr. LaBatte attached the unsigned declarations of Messrs. Lake and Hawkins as an offer of proof when he submitted his claim.  *Id.*

D.    Mr. LaBatte's Track B Claim Is Denied

On October 30, 2012, the Track B Neutral issued a final determination denying Mr. LaBatte's claim.  Pl. App. at 681.  The Track B Neutral denied the claim on the ground that Mr. LaBatte "failed to satisfy the requirement of the Settlement Agreement, through a sworn statement, that named white farmers who are similarly situated to you received USDA loans or loan servicing that was denied to you." *Id.* at 682.  The decision explained that Mr. LaBatte's attorney's declaration was not sufficient on two grounds.  First, it was insufficient because the Settlement Agreement required a sworn statement "based on personal knowledge," but the information was from the two "federal officials," not the attorney's personal knowledge.  *Id.* at 681-82.  Second, it was insufficient because the statements in the attorney's declaration "purporting to establish that white farmers received a benefit (loans) that [Mr. LaBatte was] denied, lack the specificity necessary to establish that those benefits were, in fact received by the white farmers." *Id.* at 682.  The decision concluded with a statement that it was "final" and was "not reviewable by the claims administrator, the Track A Neutral, the Track B Neutral, the district court, or any other party or body, judicial or otherwise." *Id.* (emphasis omitted).

E.    Mr. LaBatte's Notice Of Disagreement

On November 26, 2012, Mr. LaBatte sent a letter to the Departments of Justice and Agriculture asserting that the Government instructed his proffered witnesses not to sign their declarations in support of his claim and alleged that this violated the Government's duty of good faith and fair dealing.  Pl. App. at 683.  He requested that he be awarded the full value of his claim under Track B.  Notably, however, he did not allege that any specific provision of the

Settlement Agreement had been violated.  *Id.* at 687.  As contemplated by the Settlement

Agreement, the Government did not respond.  *See Id.* at 43 (SA § XIII.B.2) ("If the opposing

party fails to respond to a notice of non-compliance within forty-five (45) days . . .").

II.    Procedural History

    A.    Plaintiff's Motion To Intervene

On July 10, 2013, Mr. LaBatte filed a motion to intervene as of right with the district

court.  Pl. App. at 694.  He asserted, among other things, that unnamed Government officials

breached the Settlement Agreement's implied covenant of good faith and fair dealing, violated

due process, and violated the First Amendment by preventing his alleged witnesses from signing

declarations on his behalf.  *See id.* at 735-49.

    B.    District Court Decision

On July 14, 2014, the district court denied Mr. LaBatte's motion to intervene on the

ground that it did not have jurisdiction over his claims.  Pl. App. at 757 (*Keepseagle v.

Veneman*, No. 99-3119 (D.D.C. Jul. 14, 2014)).  The court explained that the case was no

longer pending because it was settled in 2011, so Mr. LaBatte had to rely on the court's

ancillary jurisdiction.  *Id.* at 764-65.  Under Supreme Court precedent, the court explained,

ancillary jurisdiction is limited to two situations:  "'(1) to permit disposition by a single court of

claims that are, in varying respects and degrees, factually interdependent'" and "'(2) to enable a

court to function successfully, that is, to manage its proceedings, vindicate its authority, and

effectuate its decrees.'"  *Id.* at 764 (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375,

379-80 (1994)).  The court concluded that neither basis for ancillary jurisdiction applied.

First, the court held that the claims were not factually interdependent. The court

explained that "[t]he underlying claim that formed the basis for this case— regarding

discriminatory treatment by the Department of Agriculture—has nothing to do with Mr.

LaBatte's claims that the government prevented individuals from signing declarations." *Id.*

Second, the court held that Mr. LaBatte's claims did not fall within its jurisdiction to

effectuate its decrees because those claims were outside the continuing jurisdiction specified in

the Settlement Agreement.  The court also held that Mr. LaBatte failed to establish that the

Settlement Agreement provided for continuing jurisdiction over his claims.

The court also found that Mr. LaBatte was seeking review of the Track B Neutral's final

determination of his claim, which is expressly prohibited by the Settlement Agreement.  *Id.* at

766.  The court rejected Mr. LaBatte's contention that the Government's actions rendered the

process so infirm that there effectively was no process, noting that he had followed the Track B

process and had his claim denied.  *Id.*

Finally, the court also rejected Mr. LaBatte's reliance on the Settlement Agreement's

requirement in section IX.A.10 that "'the Secretary and/or the United States shall have no role

in the Non-Judicial Claims Process.'"  *Id.* at 767.  The court noted that Mr. LaBatte did not

comply with the process for alleging a violation of the Settlement Agreement because he failed

to identify the provision in his notice to the Government, *id.*, and he also did not explain how

the court's jurisdiction "'to supervise the distribution *of the Fund*'" would include "the ability

to hear his claim that the government played an undue role '*in the Non-Judicial Claims*

*Process*,'" *id.* at 767-68.  The district court also concluded that it lacked jurisdiction over Mr.

LaBatte's claims because exercising jurisdiction would conflict with the Settlement

Agreement's "specific withholding of jurisdiction to review 'Claim Determinations' or 'any

other determination made under this Non-Judicial Claims Process.'"  *Id.* at 768.

C.      The D.C. Circuit's Decision

Mr. LaBatte appealed the district court's decision to the United States Court of Appeals for the District of Columbia, and lost.  *See Keepseagle v. Vilsack*, 815 F.3d 28, 32 (D.C. Cir. 2016).  In its decision, the D.C. Circuit affirmed the district court's determination that it did not possess ancillary jurisdiction over Mr. LaBatte's breach claim, explaining that his claim that the Government interfered with his ability to file a claim was not factually interdependent from his underlying claim of discrimination.  *Id*. at 34.  Further, the Court held that the Settlement Agreement's enforcement clause provided the district court only with jurisdiction to enforce the distribution of the funds.  *Id*.  In holding that the Agreement's provision for the court's authority over distribution of the funds did not extend to jurisdiction over Mr. LaBatte's Government interference claim, the circuit court stated that "LaBatte's argument fails to account for the Agreement's strong finality language declaring all claim determinations final and unreviewable."  *Id*.  The court found none of Mr. LaBatte's remaining arguments persuasive.  *Id*. at 36.

D.      Plaintiff's Complaint In The Court Of Federal Claims

Mr. LaBatte filed his complaint in this Court on July 5, 2016.  ECF No. 1.  In it, Mr. LaBatte argues that the Government breached the Settlement Agreement and the implied duty of good faith and fair dealing by directing Messrs. Hawkins and Lake not to sign his Track B declarations.  Compl. ¶¶ 215-41.  Mr. LaBatte also contends that the United States breached the Settlement Agreement by allegedly failing to respond to his notice of violations within 45 days.  *Id*. ¶¶ 243-67.  Finally, Mr. LaBatte largely repeats count one of the complaint by asserting that the United States breached the Settlement Agreement by denying him the opportunity to process his claim under the Track B process without Government interference.  *Id*. ¶¶ 269-97.

Mr. LaBatte seeks a declaratory judgment that the United States breached the Settlement for these reasons, and that the Court award him his full Track B claim amount of $202,700.52.

## SUMMARY OF ARGUMENT

This Court does not possess jurisdiction to entertain any of Mr. LaBatte's claims. At bottom, as with his claims before the district court, Mr. LaBatte's complaint seeks to reopen the Track B Neutral's final decision dismissing his claim. However, the finality provision of the Settlement Agreement, which states that "Claim Determinations . . . made under this Non-Judicial Claims Process are final and are not reviewable by the . . . District Court, or any other party or body, judicial or otherwise." Pl. App. at 21 (SA § IX.A.9), makes clear that this Court does not possess jurisdiction to review non-judicial claims determinations. Moreover, this Court does not possess jurisdiction to entertain Mr. LaBatte's claim that the Government breached the Settlement Agreement by failing to respond to his notice of violation within 45 days because the Settlement Agreement expressly grants enforcement authority exclusively with the district court.

Alternatively, even if this Court did possess jurisdiction to entertain the complaint, the complaint should be dismissed for failure to state a claim. Mr. LaBatte alleges that the Government interfered with his ability to file a Track B claim by directing Messrs. Lake and Hawkins not to sign their declarations. However, both men work for an Executive Branch agency and the Settlement Agreement states that Executive Branch employees shall have no role in the non-judicial claims process. Even assuming that the complaint's factual allegations are true, therefore, this would only show that the Government acted consistently with the terms of the Settlement Agreement. Moreover, the Track B Neutral considered the declarations as an offer of proof, and concluded that they failed on the merits.

Furthermore, the complaint fails to state a claim for breach of the Settlement Agreement because of the Government's alleged failure to respond to Mr. LaBatte's notice of violation. As found by both the district court and the D.C. Circuit, Mr. LaBatte did not follow the procedural requirements set forth in the Settlement Agreement because he failed to identify any terms of the Settlement Agreement alleged to have been violated. Moreover, the Settlement Agreement itself contemplates that the Government might not respond to a notice of violation. The complaint should be dismissed.

ARGUMENT

I.    Standard Of Review

A.    Subject-Matter Jurisdiction

When deciding a motion to dismiss for lack of subject-matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). If the defendant challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

B.    Failure To State A Claim

A motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted is appropriate when the plaintiff's alleged facts do not entitle him to a remedy. *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). In considering such a motion, the Court assumes all well-

12

pled factual allegations as true and makes all reasonable inferences in favor of the non-movant.

*Perez*, 156 F.3d at 1370.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration in original) (citations omitted).  Rather, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*

## II.   The Complaint Should Be Dismissed For Lack Of Subject-Matter Jurisdiction

As a general matter, this Court normally possesses jurisdiction under the Tucker Act to

review claims for breach of settlement agreements.  *See Stovall v. United States*, 71 Fed. Cl. 696,

698 (2006); *Hall v. United States,* 69 Fed. Cl. 51, 55 (2005).  However, this Court's jurisdiction

over contract disputes with the United States does not extend to disputes involving contracts that

limit the scope of judicial enforcement to a Federal district court.  *See Stovall*, 71 Fed. Cl. 696 at

701–02 ("Nor does this matter involve a category of case that has been dedicated exclusively to

the district courts or some other court.").  Moreover, the United States Court of Appeals for the

Federal Circuit has held that parties can contractually limit the scope of judicial review.  *See*

*Monsanto Co. v. McFarling*, 302 F.3d 1291, 1294 (Fed. Cir. 2002) (holding forum selection

clause was enforceable); *Minesen Co. v. McHugh*, 671 F.3d 1332, 1339 (Fed. Cir. 2012)

(explaining that Government can "enforce a voluntary contractual waiver with the same force as a private party, notwithstanding superior bargaining power").

In this case, unlike the plaintiffs in *Stovall* and *Hall*, Mr. LaBatte contracted away any right he may have had to seek judicial review in this Court.  Indeed, the Settlement Agreement repeatedly states that claims determinations by the Neutrals were final and non-reviewable *by any court*.  Section IX.A.9 provides that "[t]he Claim Determinations, and any other determinations made under this Non-Judicial Claims Process are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise."  Pl. App. at 21 (SA § IX.A.9).  It further states that "[t]he Class Representatives and the Class agree to forever and finally waive any right to seek review of the Claim Determinations, and any other determinations made under this Non-Judicial Claims Process."  *Id.*  Moreover, the Settlement Agreement defines a "claim determination" as "the binding and final result of a Track A or a Track B adjudication" that "represents whether a Class member is eligible to receive an award as a result of the Non-Judicial Claims Process, and if so, the amount of the award."  *Id.* at 4 (SA § II.C).  Under these circumstances, this Court does not possess jurisdiction to entertain Mr. LaBatte's claims.[4]

"An interpretation which renders portions of the contract meaningless, useless, ineffective, or superfluous should be eschewed."  *T. Brown Constructors, Inc. v. Pena*, 132 F.3d 724, 730–31 (Fed. Cir. 1997).  Applying this well-settled principle, it is clear that the Court

---

[4]  We recognize that the jurisdictional issue raised implicates a provision of the Settlement Agreement that precludes judicial review of the contracted for arbitrator's decision.  As such, the jurisdictional analysis called for might be characterized as raising a question as to whether the Court could afford the plaintiff relief given the finality provision contained in the contract.  To the extent that the Court agrees, we respectfully request that the Court consider the argument under the failure to state a claim provision of RCFC 12(b)(6).

cannot exercise jurisdiction over Mr. LaBatte's claims of breach without rendering the

Settlement Agreement's finality provision essentially meaningless.  As the D.C. Circuit

explained, "[i]f any dispute concerning the Track B process is, in essence, a dispute concerning

the distribution of funds . . . , then the entire non-judicial claims process would be open to

judicial review (whether Track A or Track B), a result in direct contravention to the finality

provision."  *Keepseagle*, 815 F.3d at 35.  Similarly, exercising jurisdiction would also eliminate

the election to waive any judicial review of the neutral's determination made by Mr. LaBatte and

every other claimant.  *See id.* ("Given the explicit terms circumscribing the Court's jurisdiction,

such an interpretation of fund distribution would run counter to the intent of the parties in

entering into the Agreement.").

Although the D.C. Circuit was specifically addressing Mr. LaBatte's argument that the

district court could exercise jurisdiction to review his breach claim because it possessed

jurisdiction to review the distribution of the settlement funds, the circuit court's logic applies

equally to this case.  This is because this Court *cannot* exercise jurisdiction over his claim of

breach *without also* subjecting the Track B Neutral's determination to review.  *See* Pl. App. at 21

(SA § IX.A.9) ("The Claim Determinations, *and any other determinations* made under this Non-

Judicial Claims Process are final and are not reviewable . . . ." (emphasis added)).  Indeed, Mr.

LaBatte claims that the entire Track B process was a sham.  *See* Compl. ¶ 216 ("LaBatte did not

opt out of the Class Action Settlement Agreement because Track B, at the time, appeared real

and not illusory.").  Moreover, the complaint's prayer for relief intrinsically asks for the Court to

void the Neutral's determination by demanding the full amount of his non-judicial claim amount

be awarded as damages.  *See id.* at 65.  Thus, subjecting the Neutral's claim determination to

judicial review under the guise of a breach of contract claim would impermissibly deprive the

parties of the benefit of the bargain that was reached, to wit, the claimants agreed to forgo judicial review in exchange for having their claims adjudicated under the non-judicial claims process. *See Pigford v. Veneman*, 292 F.3d 918, 925 (D.C. Cir. 2002).

This construction of the Settlement Agreement's limited scope of review and judicial enforcement is supported by both the district court's decision denying Mr. LaBatte's motion to intervene and the D.C. Circuit's affirmance. In its decision, the district court held that, at bottom, Mr. LaBatte seeks judicial review of the Track B Neutral's final determination of his claim. *See* Pl. App. at 757 ("That is, the motion asks this Court to review a determination made by the Track B Neutral denying Mr. LaBatte's claim for failing to supply sufficient evidence of his entitlement to relief."); *id.* at 766 ("The relief he seeks is review of the Track B Neutral's determination of this claim."). Similarly, the D.C. Circuit held that "[f]ollowing LaBatte's argument to its logical conclusion would write the finality provision out of the Agreement almost entirely." *Keepseagle*, 815 F.3d at 35.

Critically, the complaint in the instant case raises the same allegations that were raised and rejected by the district court. *See* Pl. App. at 737 (breach of settlement agreement by directing Hawkins and Lake not to sign Track B declarations); *id.* at 738 (claim for breach of settlement agreement by "not responding to notice of violations within 45 days"); *id.* at 739 (claim for breach of settlement agreement by denying Mr. LaBatte the opportunity to process his claim under the Track B procedures). Here, as was the case in district court, "Mr. LaBatte asks the Court to exercise free-ranging jurisdiction over any action he feels conflicts with the agreement." *Id.* at 768.

Finally, the Court does not possess jurisdiction over count two of the complaint because the Settlement Agreement vested the district court with exclusive jurisdiction regarding

enforcement of the Settlement Agreement.  A settlement that mandates the use of an alternative remedy in the case of breach does not give rise to Tucker Act jurisdiction. *Outlaw v. United States*, 116 Fed. Cl. 656, 664 (2014) (no Tucker Act jurisdiction because settlement agreement mandated that the "sole remedy for an alleged agency breach" was to request enforcement); *Johnson v. United States*, 107 Fed. Cl. 379, 385-86 (2012) (no Tucker Act jurisdiction because the settlement limited plaintiff's remedies to the enforcement procedures specified in the Title VII regulations); *cf. Doe v. United States*, 513 F.3d 1348, 1354- 55 (Fed. Cir. 2008) (holding that United States Court of Federal Claims did not have jurisdiction to adjudicate an employee's claim of breach of a collective bargaining agreement that provided exclusive procedures to remedy a breach); *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) (holding that United States Court of Federal Claims did not have jurisdiction to adjudicate employee's breach of contract claim based on a collective bargaining agreement providing exclusive remedial procedures).

Here, the Settlement Agreement anticipated that the parties may not have been able to obtain resolution and that a complainant may then raise issues before the district court.  The Government did not deem it necessary to respond to Mr. LaBatte's allegations and the district court heard his arguments under the enforcement mechanism described by the Settlement Agreement.  Thus, the limits of the scope of the Settlement Agreement's enforcement provisions were reached, and does not allow for further action in this Court.

III.    Alternatively, The Complaint Should Be Dismissed For Failure To State A Claim

The gravamen of the complaint is that the Government breached the Settlement Agreement by directing Messrs. Hawkins and Lake not to sign their declarations.  Compl. ¶¶ 226-28.  Specifically, the complaint alleges that the Government "violated the Settlement

Agreement's implied duty of good faith and fair dealing by directing or instructing other governmental agencies such as the Department of the Interior and the Bureau of Indian Affairs to prohibit Hawkins and Lake from providing testimony and signing the declaration that they had promised LaBatte they would sign." *Id.* ¶ 234; *see also id.* ¶ 293.  Assuming for the purposes of this motion that the complaint's factual allegations are true, there can be no breach of the Settlement Agreement because the Government's actions were consistent with the Agreement's express terms and, in any event, the Track B Neutral provided an alternative reason for his decision.

Inherent in every contract is a duty of good faith and fair dealing.  *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005).  "The covenant of good faith and fair dealing . . . imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectation*s* of the other party regarding the fruits of the contract."  *Id.*  However, the "implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions."  *Precision Pine & Timber, Inc. v. United States,* 596 F.3d 817, 831 (Fed. Cir. 2010); *see First Nationwide Bank v. United States,* 431 F.3d 1342, 1350 (Fed. Cir. 2005) ("The covenant of good faith and fair dealing requires a party to respect and implement the contract in accordance with its terms . . . .").  "[A]n act will not be found to violate the duty (which is implicit in the contract) if such a finding would be at odds with the terms of the original bargain, whether by altering the contract's discernible allocation of risks and benefits or by conflicting with a contract provision."  *Metcalf Const. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014).  Thus, courts must first look to the contract's terms, because "what that duty entails depends in part on what that contract promises (or disclaims)."

*Precision Pine,* 596 F.3d at 830; *accord Metcalf*, 742 F.3d at 991 ("What is promised or disclaimed in a contract helps define what constitutes 'lack of diligence and interference with or failure to cooperate in the other party's performance.'" (citation omitted)).

Here, the Settlement Agreement expressly provides that "the Secretary and/or the United States shall have no role in the Non-Judicial Claims Process."  Pl. App. at 21 (SA § IX.A.10). The Settlement Agreement further defines the "United States" as "individually and collectively, the Executive Branch of the United States, its agencies, instrumentalities, *agents, officers, and employees*."  *Id.* at 11 (SA § II.BBB) (emphasis added).  Thus, under the express terms of the Settlement Agreement, employees of an Executive Branch agency were to "have no role in the Non-Judicial Claims Process."

Nevertheless, the unsigned declarations of Mr. Lake and Mr. Hawkins submitted as an offer of proof did not state that the declarants were acting in their personal capacity and not as Federal employees.  *See id.* at 673-76 (Lake Declaration); *id.* at 677-79 (Hawkins Declaration). To the contrary, the declaration provided by Tim Lake stated that he was "currently employed as Office Supply Manager, BIA, Sisseton Agency.  I have been a federal employee at the Sisseton Agency since the early 1980's."  *Id.* at 673 (Lake Decl. ¶ 5).  Similarly, the declaration provided by Russell Hawkins stated that "[m]y current employment is BIA Superintendent, Sisseton Agency."  *Id.* at 677 (Hawkins Decl. ¶ 5).  However, the Bureau of Indian Affairs is an Executive Branch agency, and those employees were to "have no role in the Non-Judicial Claims Process."  *Id.* at 21 (SA § IX.A.10).  Thus, the Settlement Agreement itself precluded Messrs. Hawkins and Lake from participating at any level in the non-judicial claims process, including submitting declarations in support of Mr. LaBatte's – or any other claimant's – claim.

Indeed, the Track B Neutral's decision denying Mr. Labatte's claim noted this

discrepancy.  In his determination letter, the Track B Neutral stated that "[s]ince Mr. Kaardal's

declaration makes clear that you obtained the information in the declaration from the two federal

officials named, the Settlement Agreement's requirements have not been met."  Pl. App. at 681-

82.  Far from breaching the Settlement Agreement, therefore, any instruction given to Messrs.

Lake and Hawkins by their superiors not to submit their declarations conformed to the

Settlement Agreement's express terms.

Furthermore, the Settlement Agreement did not obligate the Government to provide

witnesses for Mr. LaBatte or any other Track B claimant.  *See* Pl. App. at 21 (SA § IX.A.13)

("The Secretary and/or the United States shall have no obligation to provide any information,

documents, or discovery to the Class, Class Members, or Class Counsel . . . .").

Moreover, the complaint fails to account for the Agreement's strong finality language

declaring all claim determinations final and unreviewable.  *See id.* (SA § IX.A.9) ("The Claim

Determinations, and any other determinations made under this Non-Judicial Claims Process are

final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B

Neutral, the District Court, or any other party or body, judicial or otherwise."); *id.* § II.C, J.A.

102 (defining "Claim Determination" as "the binding and final result of a Track A or Track B

adjudication [that] represents whether a Class Member is eligible to receive an award as a result

of the Non-Judicial Claims Process, and if so, the amount of the award").  The Agreement does

not provide for automatic payments from the Compensation Fund, but rather places the sole

authority to determine monetary awards in the control of the non-party Claims Administrator.

Thus, Mr. LaBatte's proposed remedies are not plausible on their face because they completely

ignore and write out both the administrative scheme created by the parties for determining monetary damages and erase the finality provisions of the Settlement Agreement.

More importantly, Mr. LaBatte cannot plausibly state a claim for breach of the Settlement Agreement because the Track B Neutral provided an alternative rationale for his decision. Discussing the unsigned declarations submitted as an offer of proof, the Track B Neutral wrote: "Further, the statements in [Mr. LaBatte's counsel's] declaration purporting to establish that white farmers received a benefit (loans) that you were denied, lack the specificity necessary to establish that those benefits were, in fact received by the white farmers." Pl. App. at 682. Therefore, the Track B Neutral's alternative reason for denying Mr. LaBatte's non-judicial claim would still apply even if Messrs. Lake and Hawkins had signed the declarations and they were found procedurally acceptable. Under the express terms of the Settlement agreement, this determination is not subject to review by this Court. Pl. App. at 21 (SA § IX.A.9).

Finally and relatedly, count two of the complaint should also be dismissed for failure to state a claim. In count two, Mr. LaBatte alleges that the Government breached the Settlement Agreement by not responding to his notice of violations within 45 days. Compl. ¶ 262. However, as explained above, the Settlement Agreement contemplated that the parties may not have been able to obtain resolution. Pl. App. at 43 (SA § XIII.B.2).

Moreover, Mr. LaBatte did not follow the Settlement Agreement's procedural requirements when he submitted his notice of violation to the agency. *See* Pl. App. at 43 (SA § XIII.B.1). The Settlement Agreement required the party seeking enforcement to serve "a written notice that describes with particularity the term(s) of the Settlement Agreement that are alleged to have been violated," among other things. *Id.* Both the district court and the D.C. Circuit correctly found that Mr. LaBatte failed to satisfy this requirement. *Keepseagle*, 815 F.3d at 32.

Mr. LaBatte's notice stated only that the Government violated the "[S]ettlement [A]greement's covenant of good faith and fair dealing," without citing to any specific provision of the Settlement Agreement.  *See* Pl. App. at 684-86.

As the D.C. Circuit explained, the notice's general claim of breach did not satisfy the Settlement Agreement:

> After receiving his rejection notice, LaBatte attempted to follow the requirements of the Agreement by serving the Government with a written notice alleging that, by prohibiting Hawkins and Lake from signing LaBatte's declarations, the Government impermissibly interfered with the Keepseagle claims process.  In doing so, LaBatte alleged, the Government breached the 'covenant of good faith and fair dealing' implied in the Agreement.  His notice did not otherwise accuse the Government of violating any particular provision of the Agreement.

*Keepseagle*, 815 F.3d at 32.  Having failed to satisfy the terms of the Settlement Agreement when he sent his notice to the agency, Mr. LaBatte's claim that the agency's lack of a response constitutes a breach of the agreement makes little sense.  This should end the matter.  *See Terry v. United States*, 103 Fed. Cl. 645, 655 (2012) ("[P]laintiff presents conclusory and speculative allegations that are contrary to . . . the exhibits appended to and incorporated by reference in her pleadings. . . . In such circumstances, the contents of the exhibits and solicitation control, and the court need not accept as true plaintiff's allegations related thereto.").

In sum, assuming that the facts alleged in the complaint are true, Mr. LaBatte cannot articulate any grounds that would entitle him to any relief by this Court.  RCFC 12(b)(6); *Godwin*, 338 F.3d at 1377.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant this motion and dismiss the complaint.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

s/Matthew Roche
MATTHEW ROCHE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0466
Facsimile: (202) 514-8624
Matthew.P.Roche@usdoj.gov

November 7, 2016                     Attorneys for Defendant