# In the United States Court of Federal Claims

No. 16-798C
(Filed: March 29, 2019)

```
*************************************
TIMOTHY LABATTE,                    *
                                    *
           Plaintiff,               *    Keepseagle Litigation; RCFC 12(b)(6);
                                    *    Failure to State a Claim Upon Which
     v.                             *    Relief Can Be Granted; Contract
                                    *    Interpretation; Contractual Duty; Breach;
THE UNITED STATES,                  *    Remedy
                                    *
           Defendant.               *
*************************************
```

Erick G. Kaardal, Minneapolis, MN, for plaintiff.

Matthew Roche, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

In this case, plaintiff Timothy LaBatte contends that defendant United States breached a settlement agreement reached between Native American farmers and the United States Department of Agriculture ("USDA") to resolve a class-action discrimination lawsuit. Currently before the court is defendant's renewed motion to dismiss Count II of Mr. LaBatte's complaint. As explained below, Mr. LaBatte has not alleged facts demonstrating that the USDA was bound by a contractual duty. Further, under the facts as alleged, to the extent that the USDA had any such duties and breached them, Mr. LaBatte already received any remedies to which he was entitled. Therefore, the court grants defendant's motion.

## I. BACKGROUND

The factual background pertaining to this dispute is outlined in a prior decision of the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). See LaBatte v. United States, 899 F.3d 1373, 1375-77 (Fed. Cir. 2018); see also Keepseagle v. Vilsack, 815 F.3d 28, 30-32 (D.C. Cir. 2016). Nevertheless, a summary of the relevant facts is provided below in order to provide context to the court's ruling.

### A. <u>Keepseagle</u> Settlement Agreement

On November 1, 2010, the parties in <u>Keepseagle v. Vilsack</u>, a class-action lawsuit in the United States District Court for the District of Columbia ("DC district court"), reached a settlement agreement (the "<u>Keepseagle</u> settlement agreement") to resolve "alleg[ations] that USDA discriminated against Native Americans in its farm loan and farm loan servicing programs." Compl. App. 4. The DC district court approved the <u>Keepseagle</u> settlement agreement on April 28, 2011. <u>Id.</u> at 155-57. That agreement included the following definitions:

> The "Class" is all persons who are Native American farmers and ranchers who (1) farmed or ranched or attempted to farm or ranch between January 1, 1981 and November 24, 1999; (2) applied to the USDA for participation in a farm loan program during that same time period; and (3) during the same time period filed a discrimination complaint with USDA either individually or through a representative with regard to alleged discrimination that occurred during the same time period.
>
> The phrase "filed a discrimination complaint with the USDA" . . . shall include . . . complaints made orally or in writing with other persons if evidence . . . establishes that the recipient of the complaint forwarded it to the USDA. In determining whether the evidence establishes a complaint was forwarded to the USDA, the [adjudicator] shall consider all of the available evidence including representations made to the putative claimant and presumptions of regularity that attach to the conduct of government officials (including tribal government officials).

<u>Id.</u> at 4-5.

The <u>Keepseagle</u> settlement agreement provided relief to claimants under one of two tracks—Track A and Track B—as elected by each claimant. <u>Id.</u> at 21; <u>see also id.</u> at 24-29 (listing the requirements and procedures for each track), 162 (summarizing the relief available under each track). Track A claimants were required to establish entitlement to relief under a "substantial evidence" standard, <u>id.</u> at 24, whereas Track B claimants were required to establish entitlement by a "preponderance of the evidence," <u>id.</u> at 26. Successful claimants under both tracks received debt relief (i.e., elimination of all outstanding farm loan obligations), an additional payment to offset tax liabilities resulting from the debt relief (i.e., a tax neutralization payment equal to 25% of the principal amount), and certain priority servicing regarding future loans. <u>Id.</u> at 6, 29, 40-41. In addition, successful Track A claimants received a one-time $50,000 award plus a tax neutralization payment, and successful Track B claimants received "actual damages" proven up to $250,000. <u>Id.</u> at 10. Among other elements, Track B claimants were required to prove that (1) "[t]he treatment of [their] loan or loan servicing application(s) by USDA was less favorable than that accorded a specifically identified, similarly situated white farmer" and (2) they "filed a discrimination complaint with the USDA." <u>Id.</u> at 27. Both of these

elements could be "established by a credible sworn statement based on personal knowledge by an individual who [was] not a member of the Claimant's family." Id. Such sworn statements were not required to "be admissible under the Federal Rules of Evidence," but were required to establish the necessary facts "by a preponderance of the evidence." Id.

The Keepseagle settlement agreement provided for a maximum of $80 million in aggregate debt relief and an additional $680 million in aggregate damages awards.[1] Id. at 15, 29. The agreement included detailed procedures for distributing settlement funds; essentially, recipients would receive reduced amounts if there were insufficient funds available to pay all awards, whereas a Cy Pres Fund would be established if there were excess funds remaining after all awards were paid.[2] Id. at 16, 29-35.

Entitlement to relief was determined by either a Track A Neutral or a Track B Neutral. Id. at 9, 11. Each of these neutrals was a "third-party claims adjudication company suggested by Class Counsel and approved by the Court to determine the merits of the claims submitted" under each track. Id. Decisions by the neutrals were nonreviewable:

> The Claim Determinations, and any other determinations made under this Non-Judicial Claims Process[,] are final and are not reviewable by the Claims Administrator, the Track A Neutral, the Track B Neutral, the District Court, or any other party or body, judicial or otherwise. The Class Representatives and the Class agree to forever and finally waive any right to seek review of the Claim Determinations, and any other determinations made under this Non-Judicial Claims Process.

Id. at 21. In addition, with exceptions not relevant here, the agreement provided that "the United States shall have no role in the Non-Judicial Claims Process." Id. The agreement defined "United States" as "individually and collectively, the Executive Branch of the United States, its agencies, instrumentalities, agents, officers, and employees." Id. at 11.

Importantly, the Keepseagle settlement agreement contemplated limited court supervision. As relevant here, it provided that the DC district court would retain jurisdiction over the nonjudicial claims process for a maximum of five years beyond the April 28, 2011 final approval as follows:

---

[1] Tax neutralization payments were included within the cap on aggregate damages awards. Compl. App. 15.

[2] Approximately $380 million remained after settlement funds had been distributed to prevailing claimants. Keepseagle v. Vilsack, 118 F. Supp. 3d 98, 108 & n.3 (D.D.C. 2015), appeal dismissed, Nos. 15-5297, 15-5316, 2015 WL 9310099 (D.C. Cir. Dec. 17, 2015) (unpublished order).

> The Court shall retain jurisdiction over this action to supervise the distribution of the Fund and to ensure that Debt Relief Awards issued by the Track A and Track B Neutrals are applied by USDA, subject to both the limitations provided in [section] IX.E of this Agreement and not to exceed the cap of $80 million.  This continuing jurisdiction will continue until final payment from the Fund and application of the debt relief.  The Court shall have no other role in supervising the provision of debt relief or the methods used to cancel outstanding debt owed to USDA, and shall have no role in resolving any disputes between a Class Member and the United States concerning the provision of debt relief.

Id. at 41; see also id. at 6 (defining "District Court" and "Court" as the DC district court "unless the context reveals otherwise").  Finally, the Keepseagle settlement agreement included the following enforcement provision, which was designed in part to minimize judicial involvement:

> Before seeking any order by the Court concerning any alleged violation of the provisions of this Settlement Agreement that are enforceable by the Court, the parties must comply with the following procedures:
>
> 1. The party seeking enforcement of any of the provisions of this Settlement Agreement that are enforceable by the Court shall serve on the opposing party a written notice that describes with particularity the term(s) of the Settlement Agreement that are alleged to have been violated, the specific errors or omissions upon which the alleged violation is based, and the corrective action sought.  The party alleging the violation shall not inform the Court of the allegation at that time.
>
> 2. The parties shall make their best efforts to resolve the matter in dispute without the Court's involvement.  If requested to do so, the party who served the notice shall provide to his opponent any information and materials available to the noticing party that support the violation alleged in the notice.  Upon receipt of the notice, the counsel for the parties agree to meet and confer, and otherwise to work with their clients within forty-five (45) days to respond to the allegation . . . .  If the opposing party fails to respond to a notice of non-compliance within forty-five (45) days . . . , or the parties otherwise cannot resolve the issue, the party who served the notice of violation . . . may move for enforcement of the provisions of this

>      Settlement Agreement that are enforceable by the Court as
>      early as seventy-five (75) days after the date on which the
>      notice was served . . . . If, and only if, the plaintiffs prevail
>      in securing enforcement of a contested term of the
>      [Settlement] Agreement over which the Court has retained
>      jurisdiction, the Court may award them reasonable
>      attorneys' fees and costs.

Id. at 42-43.

### B.  Mr. LaBatte Seeks Relief as a Keepseagle Class Member

Mr. LaBatte timely filed his claim package on December 23, 2011, to seek relief under Track B the Keepseagle settlement agreement. Id. at 162, 167. As part of his claim package, Mr. LaBatte identified two nonfamily witnesses willing to provide sworn statements pertaining to facts supporting his claim: Russell Hawkins and Tim Lake. Compl. ¶¶ 165-67. Mr. LaBatte had complained to both individuals regarding the USDA's treatment of his loan applications. Id. ¶ 179. Other potential witnesses had either passed away or could not be located. Id. ¶ 124. At the time of the events in question, Mr. Hawkins was Mr. LaBatte's tribal chairman; Mr. Lake was also a member of the same tribe. Id. ¶¶ 168-69. Additionally, Mr. Lake worked for the Bureau of Indian Affairs ("BIA"), an agency within the United States Department of the Interior, with stints as the acting area superintendent. Id. ¶ 172. Mr. Hawkins would later become a federal employee—also with the BIA—but not until after the events to which he was willing to testify had occurred. Id. ¶¶ 12, 171. Neither had any connection to the USDA, either during the time of the events supporting Mr. LaBatte's Track B claim or afterwards. Id. ¶ 13. As part of his claim package, Mr. LaBatte provided expert testimony establishing lost revenues of $202,700.52 due to the USDA's actions. Id. ¶ 181.

After Messrs. Hawkins and Lake each agreed to sign a declaration supporting Mr. LaBatte's Track B claim, draft declarations were prepared for review, revision, and execution. Id. ¶¶ 185-87; Compl. App. 754-55. However, upon informing BIA officials of their planned participation, Compl. ¶ 188, Messrs. Hawkins and Lake were both "directed or instructed by federal government officials not to sign declarations of fact that supported [Mr.] LaBatte's claim under the Track B process," id. ¶¶ 189-90; accord id. ¶ 191 (indicating that Mr. Hawkins informed Mr. LaBatte that "neither he nor [Mr.] Lake could sign any declaration to support [Mr. LaBatte's] claim because of their supervisor's instructions"). Because he was unable to provide the sworn declarations, Mr. LaBatte provided a declaration from his attorney recounting his efforts to obtain those declarations, describing the government's actions preventing him from doing so, and summarizing the content of the unsigned declarations. Id. ¶ 199.

Despite the information provided by Mr. LaBatte's attorney, Mr. LaBatte's Track B claim was denied on October 30, 2012, due to the lack of a credible sworn statement by an individual with personal knowledge of the relevant facts. Id. at 681-82.

### C. Mr. LaBatte Attempts to Enforce the Settlement Agreement

On November 26, 2012, Mr. LaBatte (through his attorney) sent a notice of violation to the USDA. Id. at 683-87. In that notice, Mr. LaBatte indicated that the federal government was subject to "an implied duty of good faith and fair dealing under the settlement agreement," and breached that duty by preventing Messrs. Hawkins and Lake from providing the sworn declarations required under section IX.D.2.A of the agreement. Id. at 684. In addition, he acknowledged that under section IX.A.13 of the agreement, the government "had no obligation to provide information" to him, but asserted that the government was "not authorize[d] . . . to interfere with [the] Track B process" by instructing his witnesses not to sign declarations. Id. at 685-86. Finally, Mr. LaBatte averred that he should be awarded the value of this Track B claim, i.e., $202,700.52. Id. at 686.

The USDA did not respond to Mr. LaBatte's November 26, 2012 notice of violation. Compl. ¶¶ 203-04. Accordingly, on July 10, 2013, Mr. LaBatte moved to intervene in the Keepseagle lawsuit in DC district court. See generally Compl. App. 694-753 (Mr. LaBatte's proposed Verified Complaint in Intervention). The DC district court denied his motion for intervention on July 14, 2014, for lack of subject-matter jurisdiction. Id. at 765 ("Mr. LaBatte must therefore demonstrate that the Agreement provides for jurisdiction over his claim. He fails to do so." (footnote omitted)).[3]

Mr. LaBatte appealed the denial of his motion to intervene to the United States Court of Appeals for the District of Columbia Circuit, Compl. ¶ 211, which, on March 4, 2016, affirmed the DC district court's decision:

> Although the Keepseagle class action generated the Agreement, the operation of which is contested in this suit, the facts of the two actions are not "interdependent." [Mr.] LaBatte's claim that the Government interfered with his ability to file properly a claim pursuant to the Keepseagle Agreement has nothing to do with the facts underlying the Keepseagle class action, which involved discrimination in providing loans to Native American farmers.

Keepseagle, 815 F.3d at 33-34. The court further explained that the DC district court retained jurisdiction to oversee the distribution of funds, which was distinct from the processing of claims, and noted that Mr. LaBatte's claim ultimately concerned the latter. Id.

---

[3] Pages 757 through 768 of the appendix to Mr. LaBatte's complaint is a complete copy of the DC district court's July 14, 2014 order denying the motion to intervene. Compare Compl. App. 757-68, with Keepseagle v. Vilsack, Civil Action No. 99-3119 (EGS), 2014 WL 11816917 (D.D.C. July 14, 2014).

### D.  Procedural History

Following the unsuccessful appeal of the denial of his motion to intervene in the DC district court, Mr. LaBatte instituted the instant lawsuit on July 5, 2016.  In his complaint, Mr. LaBatte asserts three counts.  In Count I, Mr. LaBatte alleges that defendant breached the Keepseagle settlement agreement's implied duty of good faith and fair dealing by prohibiting Messrs. Hawkins and Lake from providing testimony by signing declarations in support of Mr. LaBatte's Track B claim.  Compl. ¶¶ 214-41.  In Count II, Mr. LaBatte alleges that defendant breached the settlement agreement's express terms and the implied duty of good faith and fair dealing by failing to respond to his November 26, 2012 notice of violation, failing to meet and confer, and otherwise failing to use its best efforts to resolve the dispute without judicial intervention.  Id. ¶¶ 242-67.  Finally, in Count III, Mr. LaBatte alleges that defendant breached the settlement agreement's implied duty of good faith and fair dealing by denying him the opportunity to have his claims evaluated without government interference and effectively destroying evidence.  Id. ¶¶ 268-97.  He seeks a declaratory judgment that defendant breached the agreement, monetary damages of $202,700.52, attorney's fees, costs, and expenses.

Defendant moved to dismiss Mr. LaBatte's complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") or, alternatively, for failure to state a claim upon which this court can grant relief pursuant to RCFC 12(b)(6).  On July 28, 2017, another judge of this court found that the United States Court of Federal Claims ("Court of Federal Claims") lacked subject-matter jurisdiction to entertain Mr. LaBatte's complaint, and emphasized that "all parties to the Settlement Agreement agreed that claims determinations by the Neutrals were final and non-reviewable by any court."  LaBatte v. United States, No. 16-798C, slip. op. at 13 (Fed. Cl. July 28, 2017), rev'd, 899 F.3d 1373 (Fed. Cir. 2018).  In other words, the court explained, "Mr. LaBatte contracted out his right to a judicial review" of claim determination decisions.  Id. at 12.  The court also noted that the Federal Circuit "has a longstanding practice of enforcing finality clauses in settlement agreements."  Id. at 13.

Mr. LaBatte timely appealed the dismissal order to the Federal Circuit.  On August 16, 2018, the Federal Circuit reversed the decision of the Court of Federal Claims and remanded the case for further proceedings.  LaBatte, 899 F.3d at 1374.  The Federal Circuit stressed that the Keepseagle settlement agreement "does not on its face bar claims for breach of the Agreement, and Mr. LaBatte is not requesting judicial review of the Track B Neutral's determination." Id. at 1378.  The court observed that "Mr. LaBatte is simply alleging that the government's interference with the witnesses constituted a breach of that agreement," and noted that "[t]here is no language in the Agreement that suggests that breach of the Agreement would not give rise to a new cause of action."  Id.  In addition, the Federal Circuit determined that "the allegations in Mr. LaBatte's complaint are more than sufficient to plausibly allege a breach of the Agreement." Id. at 1379.  The court remarked that Mr. LaBatte "plausibly allege[d]" that defendant's actions breached the "no role" provision as well as the implied duty of good faith and fair dealing, id., and noted that the "no role" provision "cannot be read to prohibit government employees from testifying or giving any information in the claims process in their personal capacities," id. at 1380.

After remand, the case was reassigned to the undersigned. On November 9, 2018, defendant filed an answer with respect to Counts I and III of Mr. LaBatte's complaint and a renewed motion to dismiss Count II under RCFC 12(b)(6) for failure to state a claim upon which this court can grant relief.[4] The court stayed the deadline for filing the joint preliminary status report required by RCFC Appendix A, Part III, pending resolution of defendant's motion to dismiss. Briefing on defendant's motion is now complete. The parties did not request oral argument, and the court deems it unnecessary. Defendant's motion is now ripe for adjudication.

## II. STANDARD OF REVIEW

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief. Laguna Hermosa Corp. v. United States, 671 F.3d 1284, 1288 (Fed. Cir. 2012) ("A complaint must be dismissed under [RCFC] 12(b)(6) when the facts asserted do not give rise to a legal remedy . . . .").

To survive an RCFC 12(b)(6) motion to dismiss, a plaintiff must include in its complaint "enough facts to state a claim to relief that is plausible on its face" sufficient for the defendant to have "fair notice" of the claim and the "grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted). In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on such a motion, the court must "accept as true all of the factual allegations contained in the complaint" and any attachments thereto. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citing Twombly, 550 U.S. at 555-56); accord RCFC 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (applying RCFC 10(c) and emphasizing that courts "must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007))).

The issue at this stage of litigation is not the sufficiency of any potential defenses or the likelihood of Mr. LaBatte's eventual success on the merits of his claim, but simply whether Mr. LaBatte has alleged specific facts describing a plausible claim for relief. See Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) ("The court must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974))).

---

[4] Because the Federal Circuit did not address whether Mr. LaBatte stated a plausible claim for relief under Count II of his complaint, defendant's motion does not run afoul of the mandate rule. See Banks v. United States, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (observing that the mandate rule precludes a trial court from reconsidering issues that were "considered and decided by an appellate court" earlier in the same case).

## III. ANALYSIS

As noted above, Mr. LaBatte contends, in Count II of his complaint, that the USDA breached the Keepseagle settlement agreement's express terms and the implied duty of good faith and fair dealing by failing to respond to his November 26, 2012 notice of violation, failing to meet and confer, and otherwise failing to use its best efforts to resolve the dispute without judicial intervention. Defendant moves to dismiss Count II for failure to state a claim upon which this court can grant relief for three independent reasons. Specifically, defendant avers that (1) it had no duty to respond to Mr. LaBatte's notice of violation since his "claim of breach was not a matter that was 'enforceable by the Court,'" (2) Mr. LaBatte failed to follow the procedural requirements pertaining to the notice of violation because his notice "failed to identify any terms of the Settlement Agreement alleged to have been violated," and (3) "Mr. LaBatte cannot possibly demonstrate that he was harmed by the Government's alleged failure to respond to his notice of violation." Def.'s Mot. 10-11. Mr. LaBatte disputes each of these contentions.

To prove a breach of contract, a plaintiff must establish "(1) a valid contract between the parties; (2) an obligation or duty arising from that contract; (3) a breach of that duty; and (4) damages caused by the breach." Century Expl. New Orleans, LLC v. United States, 110 Fed. Cl. 148, 163 (2013) (citing San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989)), aff'd, 745 F.3d 1168 (Fed. Cir. 2014). The obligations or duties arising from a contract include those that are explicitly set forth and the implied duty of good faith and fair dealing. See Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). The implied duty of good faith and fair dealing requires each party "not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party." Metcalf Constr. Co. v. United States, 742 F.3d 984, 991 (Fed. Cir. 2014) (quoting Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). The reasonable expectations of the parties thus define the contours of the implied duty of good faith and fair dealing, which exists "because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain." Id. at 990. Failure to fulfill the implied duty of good faith and fair dealing "constitutes a breach of contract," the same as if an explicit contractual provision was violated. Id.

It is undisputed that the Keepseagle settlement agreement is a valid contract between Mr. LaBatte and the federal government. See LaBatte, 899 F.3d at 1378 (casting Mr. LaBatte's claim for breach of the settlement agreement as a breach-of-contract action). However, the claim that Mr. LaBatte asserts in Count II of his complaint fails as a matter of law because the USDA had no duty to respond to the notice of violation. In addition, to the extent that the USDA breached a duty with respect to the notice of violation, Mr. LaBatte has already received the remedy contemplated by the settlement agreement.

### A. The USDA Had No Duty to Respond to the Notice of Violation

The court first addresses the duties owed by the USDA under the enforcement procedures of the Keepseagle settlement agreement. The nature of any such duties is a matter of contract interpretation. Kogan v. United States, 112 Fed. Cl. 253, 264 (2013) (citing San Carlos, 877 F.2d at 959-60). Contract interpretation, including the interpretation of government contracts, is a matter of law. Medlin Constr. Grp., Ltd. v. Harvey, 449 F.3d 1195, 1199-200 (Fed. Cir. 2006); see also Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 824 (Fed. Cir. 2010) (explaining that general rules of contract interpretation apply to federal government contracts). As such, interpreting a contract is proper when resolving a motion to dismiss. See Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir. 2014).

Contract interpretation requires determining the intention of the parties. Shell Oil, 751 F.3d at 1304; Kogan, 112 Fed. Cl. at 264. It "starts with the language of the contract. Terms must be given their plain meaning if the language of the contract is clear and unambiguous." SUFI Network Servs., Inc. v. United States, 785 F.3d 585, 593 (Fed. Cir. 2015) (citations omitted).

Defendant posits that under section XIII.B of the Keepseagle settlement agreement, "a party's duty to respond to a notice of violation and to meet and confer with opposing counsel was only triggered if the alleged violation involved a provision of the Settlement Agreement that was enforceable by the [DC district court]." Def.'s Mot. 14-15. According to defendant, the USDA "had no obligation to respond to Mr. LaBatte's notice of violation because the alleged violation did not involve any provision of the Settlement Agreement that was enforceable by the [DC district court]." Id. at 15. In contrast, Mr. LaBatte argues that "[t]he duties imposed upon all parties under the Settlement Agreement's enforcement provision [were] not contingent on any one party winning" and thus defendant cannot "retroactively [apply] the [DC district court's] ruling to assert that the provisions complained of [in his notice of violation] were not 'enforceable by the Court.'" Pl.'s Resp. 25.

Mr. LaBatte is correct that the duties outlined in the enforcement provision of the Keepseagle settlement agreement—(1) respond to a notice of violation within forty-five days, (2) meet and confer, and (3) use best efforts to resolve the issue without judicial involvement—are "not contingent on any one party winning." However, defendant is also correct that the enforcement provision is only relevant with respect to provisions of the agreement that are enforceable by the DC district court. Indeed, the enforcement provision (1) includes the phrase "provisions of this Settlement Agreement that are enforceable by the Court" three times, Compl. App. 42-43, and (2) specified that "the parties must comply" with its procedures "[b]efore seeking any order by the Court concerning any alleged violation" of those "enforceable" provisions, id. at 42.

Further, when "Court" is mentioned in the settlement agreement, it refers to the DC district court "unless the context reveals otherwise." Id. at 6. Importantly, Mr. LaBatte does not argue that "Court" could also refer to the Court of Federal Claims in the context of the enforcement provision, and thus he waives that argument. See Lawrence Battelle, Inc. v. United

-10-

States, 117 Fed. Cl. 579, 589 (2014) ("[T]his argument was waived because it did not appear in [the plaintiff's] opening brief . . . ."). Nor could Mr. LaBatte plausibly do so; the enforcement provision's inclusion of the phrase "enforcement of a contested term of the Agreement over which the Court has retained jurisdiction," Compl. App. 43 (emphasis added), coupled with the agreement's listing of the specific matters over which "[t]he Court shall retain jurisdiction," id. at 41-42 (emphasis added), reveals that, in the context of the enforcement provision, "Court" can only be reasonably interpreted to refer to the DC district court since that was the court that had jurisdiction to begin with.

The question then becomes: Which provisions of the Keepseagle settlement agreement are enforceable by the DC district court? If Mr. LaBatte's notice of violation referenced any of those provisions, then the USDA had a duty to respond, meet and confer, and use its best efforts to resolve the dispute without judicial involvement—which, as Mr. LaBatte alleges in Count II of his complaint, the USDA failed to do. On the other hand, if Mr. LaBatte's notice of violation did not reference any of those provisions, then the USDA's purported duties in response to that notice never arose.

The question is answered by section XIII.A of the settlement agreement, which specifies that the DC district court "shall retain jurisdiction over this action beyond the date of final approval of this Agreement only as set forth below." Id. at 41 (emphasis added). As relevant here, the DC district court retained jurisdiction

> to supervise the distribution of [settlement funds] and to ensure that Debt Relief Awards issued by the Track A and Track B Neutrals are applied by USDA . . . . The [DC district court] shall have no other role in supervising the provision of debt relief or the methods used to cancel outstanding debt owed to USDA, and shall have no role in resolving any disputes between a Class Member and the United States concerning the provision of debt relief.

Id. In other words, the enforcement provision of the settlement agreement only applies to disputes concerning the distribution of funds and the provision of debt relief. Mr. LaBatte's notice of violation concerned neither, and thus failed to invoke any "provisions of [the] Settlement Agreement that are enforceable by the [DC district court]." Id. at 42-43.

Finally, although Mr. LaBatte alleges, in Count II of his complaint, both a breach of the Keepseagle settlement agreement's express terms and a breach of the agreement's implied duty of good faith and fair dealing, his factual allegations invoke only the former. Indeed, Mr. LaBatte is correct to focus on the express terms of the settlement agreement because "[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." Precision Pine, 596 F.3d at 831. Because Mr. LaBatte has not established that the scope of the enforcement provision extends to his notice of violation, an implied duty with respect to that notice cannot be imposed on the USDA.

In short, the USDA had no duty to respond to Mr. LaBatte's November 26, 2012 notice of violation, meet and confer, and use its best efforts to resolve the dispute referenced therein.[5] Accordingly, he fails, in Count II of his complaint, to state a claim upon which this court can grant relief.

### B.  Mr. LaBatte Received the Relief Contemplated by the Settlement Agreement's Enforcement Provision

To the extent that the UDSA had a duty to respond to the notice of violation, meet and confer, and use its best efforts to resolve the dispute referenced therein, Mr. LaBatte plausibly alleges that the USDA breached that duty by failing to take the required actions.  However, there are no damages available because Mr. LaBatte has already received the remedy contemplated by the Keepseagle settlement agreement's enforcement provision.  Count II of his complaint therefore still fails.

Mr. LaBatte contends that he was damaged by the USDA's purported breach because "[h]ad the government complied with the procedures, a different resolution or disposition between the parties would have occurred."  Pl.'s Resp. 28-29.  Defendant replies that the USDA's "failure to respond did not preclude [Mr. LaBatte] from seeking relief in the [DC district court]."  Def.'s Reply 9.

It is certainly possible that Mr. LaBatte might have obtained a favorable result from the USDA had the USDA engaged with Mr. LaBatte in response to his notice of violation, but his contention that such a resolution "would have occurred" goes too far.  In any event, the settlement agreement's enforcement provision contains the remedy for a noticing party when a responding party fails to so engage:  the noticing party can then bring an action in the DC district court.  Mr. LaBatte availed himself of that remedy.  That he was eventually unsuccessful in his DC district court action is irrelevant.

### IV.  CONCLUSION

The court has considered all of the parties' arguments.  To the extent not discussed herein, they are unpersuasive, meritless, or unnecessary for resolving the issues currently before the court.

The USDA had no duty under the Keepseagle settlement agreement's enforcement provision to engage with Mr. LaBatte in response to his November 26, 2012 notice of violation. Further, to the extent that the USDA had such a duty and breached it by failing to respond, Mr. LaBatte has already availed himself of the remedy contemplated by that agreement—he filed suit in the DC district court.  Mr. LaBatte thus fails, in Count II of his complaint, to state a claim upon which this court can grant relief.

---

[5]  Because the USDA had no duty to respond to Mr. LaBatte's notice of violation, the court need not consider whether the notice complied with the procedural requirements outlined in the Keepseagle settlement agreement's enforcement provision.

Accordingly, the court **GRANTS** defendant's renewed motion to dismiss Count II of the complaint pursuant to RCFC 12(b)(6) and **DISMISSES** that count for failure to state a claim upon which this court can grant relief. The parties shall file the joint preliminary status report required by RCFC Appendix A, Part III (with respect to the remainder of the complaint) **no later than Tuesday, April 30, 2019**.

    **IT IS SO ORDERED.**

                                                    s/ Margaret M. Sweeney
                                                    MARGARET M. SWEENEY
                                                    Chief Judge